Our first case is 14-6117 Pavatt v. Carpenter and Ms. Jernigan for the petition. Thank you, your honors. May it please the court, my name is Sarah Jernigan and along with Co-Counsel Patty Guzzi, we represent the appellant Mr. Pavatt in this matter. From Furman, from Godfrey, from Maynard on, the Supreme Court has made crystal clear that there needs to be sufficient narrowing in order to avoid capricious and arbitrary action in the imposition of the death penalty. And I would argue that this case before us today is not one of those cases. There must be something that distinguishes those cases that are qualifying of the most severe sentence, death, from those other murders. And we will acknowledge all murder is horrible. I mean, we're not here to discuss that, but we are here to discuss what distinguishes those specific cases from those of other murders that have symptoms and facts that attend all other cases. I would say that if there is any question whatsoever as to whether the Eighth Amendment applies to the facts at hand and to the analysis at hand, I would say that we have maintained throughout briefing, throughout argument, that absolutely that the analysis must be within an Eighth Amendment context. And I would also assert that the state has expressly admitted the same. In fact, I would address the court to the oral argument, previous oral argument, before the panel in this matter. At between minute 29 and 30, state's counsel was specifically asked, is our measure what the Oklahoma Court of Criminal Appeals has done in subsequent cases? Or is our measure what is applicable federal controlling law as pronounced by the Supreme Court? And the state clearly, expressly responded that the question that this court should be concerning itself with is the latter. Does, and counsel continued, state counsel, does this evidence in this case meet what the Supreme Court has determined to be sufficiently narrowed aggravator? And immediately, state's counsel went on to discuss Maynard. So I would say there is no question whether or not the Eighth Amendment applies. But even if this court determines that the Eighth Amendment overlay, the lens upon which we must look, is a question of debate, I would say there is simply insufficient facts here to substantiate a finding of a heinous, atrocious, and cruel aggravator in this case. I certainly would welcome the court any questions. I will proceed with the discussion of those facts if there are not further questions. But as I maintained, this is not one of the cases that is sufficiently narrowed to qualify as unlike other murders. And if we look at the facts of the case, Oklahoma, under Oklahoma law, but also under Eighth Amendment jurisprudence, must sufficiently narrow. And at one point, this court approved of Oklahoma Court of Criminal Appeals narrowing. And that was when they were applying a conscious physical suffering. Plus, I would argue, it's not just simply the words conscious physical suffering, but it's a conscious physical suffering and something. At the time that it was approved by this court, the Oklahoma Court of Criminal Appeals was applying a standard that was looking for undue and substantial conscious physical suffering. And that is not what is present in this case. The Oklahoma Court of Criminal Appeals has simply gotten away from that sufficiently narrowed aggravator. And specifically, in this case, did not apply that Eighth Amendment sufficiently narrowed standard. If you look at the facts of the case, Mr. Andrews was shot twice with a shotgun. He, the medical examiner, testified that he would have possibly even lived less than a minute. There was further testimony when he was initially questioned that he said a few minutes, it was possible that he would be alive. That was not addressing the issue of his consciousness. That was just simply he would have been alive, possibly for a few minutes. Finally, kind of got down to the five minute mark, it was possible. And again, that was just simply sustaining life. That was not the actual consciousness. When he was asked about the consciousness, it was less than five minutes. And he actually testified that it was going to be less than, potentially, less than a minute that he was even conscious. He also testified that there was the likelihood that he would be, Mr. Andrews would be suffering from shock. And in that testimony about shock, that there was indication that there would not be the normal pathway to the brain of conscious thought and conscious suffering. And so if you look at the medical examiner's testimony, we don't have something that is different than other cases here. Other cases, unless you have an instantaneous death, or if you have instantaneous unconsciousness, there is going to be some component of consciousness. There is going to be some component of suffering. But it has to be something that distinguishes all other cases from the one at hand that is qualifying for the heinous atrocious and cruel aggravator. And that's simply not what we have here. In fact, the time of death that is listed on the medical examiner's report is 620. And that is before these 911 calls are even concluded. You have medical personnel testifying at trial that they were, after the 911 calls were dispatched, they were on the scene and found Mr. Andrew deceased on the scene within one minute of the 911 calls being dispatched. If you look at the transcript of the 911 calls, the medical operator acknowledges that she is sending medical personnel within a minute and 40 seconds after the initial 911 call. So again, this all murder is horrible. But this is not the type of case that is distinguished from all the other cases that are before this court. And I would think that this court would acknowledge this is not the most heinous of all facts that we have. Again, I try not to downplay murder. I mean, of course it is horrible. But there has to be something under the United States Constitution that sufficiently narrows in order to distinguish what is qualifying of death under this heinous, atrocious, and cruel aggravator. I would also acknowledge that we have sufficiently briefed that. So much so that the state has responded about the Eighth Amendment. The state makes the claim that we have not raised that sufficiently until this court. And specifically, I think it was alleged that it was not sufficiently raised until the reply before this court. But I would, again, refer this court back to the district court briefing. I would refer the court back to the Oklahoma Court of Criminal Appeals briefing. In fact, in direct appeal, we specifically cited the Thomas case. And I understand that's the case before this court. But you cannot read Thomas without having Godfrey, having Maynard, having all of the Eighth Amendment jurisprudence of the Supreme Court implicated by that reading of Thomas. And the state has acknowledged through their briefing, and as I read you earlier, crystal clear, expressly stated within oral argument before this panel's original oral argument. I don't see that. What you recited was a statement in which the court asked state counsel about an Eighth Amendment question. State counsel responded to that Eighth Amendment question. It didn't say anything about whether that was properly before us. It didn't say anything about exhaustion. It didn't say anything about any of that. So I don't see how you get that far with that little exchange that you just gave. And Ground 10, if you would remind us, Ground 10 related to what? Related to the insufficient evidence. And within its heading itself, it acknowledged the Eighth Amendment and the Fourteenth Amendment. What Supreme Court law says that embedded in, or to use the word of the panel opinion, a component of a sufficiency of the evidence claim is an Eighth Amendment aspect to it? What Supreme Court case says that? I would refer the court to Godfrey, to Maynard, and to Jackson. And within those three, the same principles are set out. Yes, Jackson, we don't deny that Jackson is applicable to this case. But, again, you cannot – what standard would heinous atrocious and cruel be measured against? Well, I'm not sure that's the game that we're talking about here. You reference sufficiency of the evidence. That is a Jackson standard. That is a due process standard. Unless you can give me a Supreme Court case that says that embedded in that is an Eighth Amendment inquiry, there is not one. Period. I would assert respectfully, Your Honor, that Jackson, a reading of that, just as all the cases I have cited, all of them rely on that same principle, which is that it must be sufficiently narrowed in order to guide the jury's discretion and that there must be something narrow that can be rationally reviewed. Without an Eighth Amendment component to this, what purpose would this court have? It would be free reign for the state court. What our court would do is take the claim as it was presented, which was there sufficient evidence under the standard for the aggravator as established by the state. That's what it is. If you wanted to raise an Eighth Amendment vagueness challenge, you could have done that, and then we would have had double duty. But that's not what happened. There can always be clearer briefing, and I will acknowledge that. But the sufficient briefing that is necessary and is required for this court, for any court, is so that the state can respond to the issues at hand and that the court itself can rationally review the issues before that. And I would assert that is what is held in the briefing, so much so that when the state responded in district court, when the state responded in front of this court, that they themselves acknowledged the Eighth Amendment component. Now, obviously they didn't agree with that. Well, obviously they're responding to the issue that is being argued in court. It takes more than that to have an express waiver, doesn't it? Again, I would assert that what was written and what I asserted was held in oral argument is an express waiver. And when you're talking about your writing, in what court? State court? State court, as I noted originally in direct appeal, the Thomas case was asserted. And I would say within Thomas. The Thomas case was asserted in what regard? In the direct appeal, as far as the insufficient. That pertains to what issue? As far as the insufficient evidence. And from that very get-go, I would argue by citing the Thomas case, which in and of itself cites the Maynard case, which cites the Godfrey case. That's what we do. We look at a case that is cited for another issue, and if there's other cases cited in that case, we contend we should look at issues that are addressed in those cases. How would that work? I would argue that that's not our position, Your Honor. Respectfully, we would say that this has never been something that has been split out. In fact, the state had multiple opportunities to say this was unexhausted, and they have never alleged that. In fact, it was not until post-opinion before the panel in this original matter. It was not until post-opinion where the state was able to see some sort of path carved out for it in which it even began to hint at this was not exhausted. Did the OCCA consider this issue exhausted? The Oklahoma Court of Criminal Appeals did not specifically cite to federal law within the original analysis on direct appeal. However, the district court and the further courts acknowledged that the Jackson standard was what was applied, even though it was not specifically cited in the Oklahoma Court of Criminal Appeals. Well, response to that question implies that embedded again within Jackson is some Eighth Amendment standard. I mean, you can give us Godfrey, but Godfrey doesn't say that. I mean, what do you discern from Godfrey that would allow you to say that any sufficiency of the evidence challenge in a capital case has embedded in it the need to do some constitutionality vagueness review under the Eighth Amendment? The sufficiency of the evidence is under an aggravator to determine whether or not there is sufficient evidence under the aggravator, and the aggravator itself is not constitutional unless it is sufficiently narrowed. That's true, but that aggravator is subject to a separate challenge under vagueness, which you did not bring. I mean, you could have done that. No one's questioning the fact that you can challenge an aggravator for being unconstitutionally vague under the Eighth Amendment, but you didn't do that. As far as a facial vagueness challenge, I will acknowledge that was not brought before the Oklahoma Court of Criminal Appeals until the second post-conviction. So I will acknowledge that a facial challenge was not asserted. So you acknowledge there is no facial challenge at issue here at all? I would say that there is a facial challenge. We have asserted that in handling that second post-conviction that it was deemed to have been raised too late, but then the Oklahoma Court of Criminal Appeals went on, which we would argue to make a merits determination. Well, and what about footnote 10 of Harris v. Reed that Ms. Crabb relies on? How do you distinguish footnote 10? And I apologize, Your Honor. Well, as I read footnote 10 of Harris v. Reed, it says, as I understand it, that the state appellate court can make a merits-based determination as long as there is an independent state procedural ground, that that does not relieve the petitioner that it doesn't matter whether there was an alternative merits-based determination as long as there was an independent procedural impediment. I would argue that Oklahoma does have a procedural impediment. I mean, part of what the Oklahoma scheme has in place for ineffective assistance of counsel, the counsel that are huge to raise. I didn't mean to talk over you, but just to make sure we're on the same page, as I understand the issue that you were getting into, and that is whether the OCCA was faced with the issue too late with the second post-conviction application. And obviously a petitioner could raise in Oklahoma this challenge on the first post-conviction application, but if he doesn't, then raising it on the second is just too late. That is true if counsel is effective. But here we do not have effective counsel, and we had counsel who was one in the same for trial and for initial direct appeal. And part of the Oklahoma scheme, part of the Oklahoma mechanism that is in place, is that if you do have the same counsel at trial as that was on direct appeal, then they allow post-conviction to act as the initial time to bring these issues before the court. Let me ask you about the second post-conviction. Oklahoma has a strange procedure, at least it's strange compared to federal procedure, that you bring post-conviction proceedings before the appeal is resolved. So the first post-conviction application in state court was filed before the OCCA had ruled on the direct appeal. So the first application you could make after the state OCCA had decided the direct appeal was your second application. That's correct, is it not? At least what we refer to it as, you have direct appeal, you would then have your post-conviction application. And the first post-conviction application was filed before the state court had decided the direct appeal. Yes, Your Honor. So the first time you had a chance to raise an issue concerning the decision on direct appeal was in your second post-conviction application. We would argue that for sure, Your Honor. And that second post-conviction application specifically argued, it's in the heading, an Eighth Amendment argument, right? Yes, Your Honor. So if the OCCA had a constitutional narrowing of the hack aggravator, and on direct appeal you argue that there wasn't sufficient evidence to establish that, and then the OCCA, in deciding your appeal, modifies the definition, the construction of the hack aggravator, your first opportunity to say that now the hack aggravator is unconstitutional would have been in your second post-conviction application, was it not? That was the first thing you filed after you had a decision from the OCCA. Yes, Your Honor. And again, even if this court does not view things in that matter, we had ineffective counsel of first post-conviction. So either way you look at it, if this is the first opportunity. Your first post-conviction, you couldn't have raised anything based on how they decided the original. Correct, because as you correctly pointed out, that was decided before the direct appeal. It was filed before the direct appeal was decided. Yes, I apologize. Yes, thank you for the correction. Could I just ask a question about the second post-conviction, just for clarification? Yes. In that second petition, didn't Mr. Pavitt treat the Eighth Amendment challenge to the hack aggravator separately from his sufficiency of the evidence challenge? I would argue that what was asserted in the second post-conviction is a facial challenge. My question wasn't facial or as applied. You've been arguing up to this point that these issues are sort of interwoven. Yes. And that they were always interwoven, but it seemed that the second petition, though, disaggregated them. Am I misreading that? I'd just like to hear what your understanding was of that petition. I believe maybe some clarification would be what I have been referring to as a facial challenge could be applied to the Oklahoma Court of Criminal Appeals as a whole. Have they been applying the properly narrowed aggravator hack, in this case, as a whole? That would be what we would call a facial challenge. What I am saying is interwoven, which we have maintained is interwoven throughout the insufficient evidence, is specific to this case. We're not worrying about everything else that the Oklahoma Court of Criminal Appeals has done or is doing. We are worried about this case. And if you look at the facts of this case, there is not sufficient evidence under a properly narrowed aggravator, the hack aggravator, to establish a constitutional reading and application of that aggravator. And I hope that addresses your question, Your Honor, that there can be an individual claim raised for the whole of the Oklahoma Court of Criminal Appeals, but there also, within any insufficient analysis, there is an Eighth Amendment lens in which the court must look to make the analysis to that specific case. Apart from how it was presented in the brief, could you address how the OCCA reacted to it? Because didn't the OCCA say that that argument, and what I mean by that, the Eighth Amendment argument, could have been raised previously and hadn't been? And so it was viewing it as a separate argument, wasn't it? And are you saying that it was wrong, that the OCCA just got it wrong? What I would say is that what was raised on second post-conviction is in addition to what had already been raised. And the insufficient evidence had been raised from direct appeal on, and the state has acknowledged that is fully exhausted. And so the facial challenge that was raised within the second post-conviction, that is in addition to. That is not just a simple repetition of what had already been asserted before the court. And the as-applied allegation, when is that first raised? Again, I would maintain that that was raised from direct appeal on. That that is part and parcel of what is necessary under an insufficient analysis. And the authority you have for that concept is what? Again, I would point to the Godfrey case, to the Maynard case, and to the Jackson case. Each of those, under each of the analysis that you look at in those cases, there is a narrowing. There is the concept that it has to be free from arbitrary and capricious action. And in order to do that, there has to be a sufficient narrowing under the Eighth Amendment. But you have to raise the issue, don't you? Or is it enough just to say, as I think you're arguing, under Jackson, which I think you do have that issue. I can see that one. Even I can see that one. The sufficiency of the evidence to support heinous, atrocious, and cruel. I don't know how you get to your other claims. I don't think you can feed into that sufficiency claim your as-applied and facial claim. Could you help me on that? I don't know if it's as distinct as your Honor is indicating. Well, you have to make these assertions before court so they can rule on them. Absolutely. And what we have done through our briefing is that as we have asked the court, we've asked the state to address a constitutional narrowing of this aggravator. That is a significant indicator that if it wasn't for the constitutional component, then we are left only with state law. Can you state the rule, then? What rule are you asking us to adopt? That if there is a sufficiency challenge, then the Eighth Amendment automatically comes in? Or are you relying on some of the particular parts of this case to say only in this case? I would argue that in order to have a sufficiency analysis under an aggravator, specifically, we'd say in this case, hack, which has already been found to be vague on its face. So a sufficiency analysis for an already vague aggravator must include an Eighth Amendment component, an overlay, a lens, whatever you would like to term it, in which the court must address, has this been sufficiently narrowed for state purposes, but more specifically with respect to this court, to federal purposes? Has the Eighth Amendment been upheld in the application that the court has applied? And in Oklahoma, I would assert specifically to this case, it simply is not and has not been applied, and the facts of the case prove that out. Can I press you on a little bit on part of your answer to Judge Phillips, and that is where the hack aggravator has already been held unconstitutional, and I assume you're talking about Maynard, but in Walton the Supreme Court interpreted Maynard to say that it requires under the Eighth Amendment a showing of torture or serious physical abuse, which was specifically the content of the instruction given. And we have held, Jones, Wilson, Workman, Walton presumably would provide further support, that it is a constitutionally sufficient narrowing construction for torture or serious physical abuse, and under Godfrey we know that that was the standard that was applied not only to the OCCA, but before the jury because that was exactly what the judge told the jury to consider to determine the applicability of the hack aggravator. So in other words, how do you get past the fact that conscious physical suffering has not been held to be a requirement of a constitutionally sufficient narrowing construction? I would agree that it is not necessarily a requirement. However, that is what Oklahoma has imposed, and so Oklahoma has the ability to determine what it is is going to be sufficient under Oklahoma law. So if the judge tells the jury you're to consider X, we have held, you're saying that it becomes a violation of the Eighth Amendment because the state court unilaterally requires something greater than that? No, I don't believe that's what I'm trying to say, Your Honor. I think what I'm trying to say is the state has been given the ability to narrow their aggravator. Hack in and of itself was found to be unconstitutional, and it has chosen the conscious physical suffering language. At one point, the Oklahoma Court of Criminal Appeals was applying that in a sufficiently narrowed manner to seek approval from this court. When did that switch? When do you say that that changed? I think we've been watching and unraveling for a while now. I mean, there have been times where it has been consistently applied. There's times where it has not been consistently applied. What we need to focus on is here, and I would argue there was not an application of that, that sufficiently narrowed aggravator in this case. There can't be. If you look at the facts of the case, there isn't undue substantial burden that would distinguish this from any other murder, and that's simply the fact pattern that we do not have here. Let me get back to conscious suffering, evidence of conscious suffering. Do we look at all in that analysis at the testimony or the 911 call from Brenda? I think that can certainly be. When she said her husband was still alive and talking to her? I think under the Jackson standard, we do have to look in the life most favorable test. And didn't the jury have that? The jury had that, but if you look, and what we've tried to point out in the briefing, is if you look at the actual evidence, the 911 tape, which the jury would have had to listen to, the state, during the presentation of the case, made a point of highlighting that Ms. Brenda Andrews was not truthful, that she was not truthful in so many respects. So if you take the evidence itself, which is the 911 call. So you just threw out all of her testimony? No, but we do have to, the jury would have to, She does not mention that Mr. Andrews is alive. She does not mention that he is breathing. She does not mention he was talking to him. Until she was prompted by the 911 operator. At that point, she said. Didn't she also talk with a friend of hers and tell him that he was alive after the first shot and grab the bag of cans to protect him from the second shot? If it's okay, I will answer the 911 call and then the testimony about the friend subsequently. The testimony, or the actual 911 call itself, she is telling upon prompting of the 911 operator, he's trying to breathe, he's trying to talk to me, he's trying. And yet when you listen to the 911 tape, you can hear medical personnel arrive, you can hear background noise, you can hear everything except for what she is supposedly claiming to be true. And so again, the jury, just because we have to. What did you do with the other testimony that she talked to Norman Nunley about her friend? There was a friend who testified that Brenda Andrews told him that Mr. Andrews grabbed a bag of cans as he was in the process of being shot. And supposedly it was alive between the first shot and the second shot. And I would argue even if we take that at face value and we acknowledge that in light most favorable to the state, if we view the facts simply upon that, we're down to you have to have an instantaneous death. And that simply cannot be the standard in order to be sufficiently narrowed under the Oklahoma standard and the federal standard. Your Honors, I see I am out of time. I'd be happy to answer any further questions. Thank you, counsel. Your time's expired. We appreciate that. Let's hear from the state. Thank you, Your Honors. You're welcome. May it please the court. My name is Jennifer Crabb and along with co-counsel Caroline Hunt, we represent. You want to pull the microphone down, please? Yes. I would like to begin with the facts of this case. First, as Judge Briscoe just noted, Brenda Andrew told Rick Nunley that after the first shot and before the second, Rob Andrew grabbed a bag of cans to shield himself. How much time was between the first and second shot? Five minutes? We don't know exactly, Your Honor. There was a witness who testified that she heard a neighbor said shot, heard a gunshot, a pause, a gunshot. After the murder, the cans that were in the bag were scattered all over the garage. However, two cans remained in the bag, at least two cans, but two of them were shredded presumably by the shotgun blast. A pellet entered Rob Andrew's left hand right about the thumb level. We know that the first gunshot was to the right side with a right to left trajectory as Rob Andrew was kneeling or squatting, something like that, probably trying to light that pilot light. It was from three to 14 feet away. The gun then had to be reloaded because it was a single-shot shotgun. That's the time during which Rob Andrew grabbed that bag of cans. The second shot was from left to right, hit him in the left neck, and as I said, a pellet entered his left hand. There's abundant evidence there of defensive injuries. Second, Brenda Andrew told Rick Nunley as well, consistent with what she said to the 911 operator, that after being shot, Rob Andrew was still either breathing or mumbling. Also, as to petitioner's assertions here today, and it's also been made in briefs, that Mr. Andrew was deceased when the first responders arrived, that is not borne out by the record. Officer Frost is the only first responder who testified. He was the third officer on the scene. As he tried to enter the garage, one of the other officers told him that there was a lot of blood, so he returned to his trunk, got gloves, came back in. By that time, someone else was with Rob Andrew, and so Officer Frost took care of Brenda Andrew and the children. He never gave any indication of Rob Andrew's condition. And petitioner has cited pages 2169 to 2171, and that's Officer Frost's testimony. Petitioner has also cited page 2239. That was the testimony of Teresa Bunn, who was a crime scene investigator. She did testify that Rob Andrew was deceased when she arrived, but she did not even get the call until 645, about 25 minutes after the 911 call was made. Rob Andrew was conscious for approximately five or six minutes after being shot twice with a shotgun. This murder falls squarely within what the Court of Criminal Appeals and this court has repeatedly affirmed, and that is, as most recently in Simpson, the victim was conscious for some period of time. A fair-minded jurist could conclude that the Court of Criminal Appeals reasonably denied the Jackson claim, and that is the only claim that was properly before the Court of Criminal Appeals. As far as the citation to Thomas, I think petitioner admitted that that was cited only for insufficient evidence and not for an Eighth Amendment claim. I would like to address Judge Hartz's concern about the second post-conviction application. First, I would note that petitioner has never alleged that his first opportunity to raise any sort of a vagueness claim was in that second post-conviction application. And secondly, I would point out that petitioner could have filed a petition for rehearing. The Court of Criminal Appeals rule on rehearing includes that the Court of Criminal Appeals decision was contrary to a controlling case to which the court's attention was not called. So this had petitioner believed that the Court of Criminal Appeals did not apply a proper narrowing construction in its decision on direct appeal. He could have and should have filed a petition for rehearing. And finally, I believe counsel just admitted twice that the claim that she is actually raising is that the evidence in this case was not sufficient to support a constitutionally narrowed application of this aggravating circumstance. And that is the very claim that the Supreme Court held in Lewis v. Jeffers is not proper. The narrowing, according to the Court in Lewis v. Jeffers, comes in the definition that is applied and in the Jackson Sufficiency Review. Beyond that, the Eighth Amendment is satisfied. And I would be happy to answer any questions the Court may have. Two brief questions. The first question I would have is what did you understand the sufficiency of the evidence challenge to be addressed to? Sufficiency of the evidence on guilt in the first instance or is it sufficiency of the evidence as to the... Are you referring to the Tenth Circuit briefing, Your Honor? I am. Okay. I did not initially represent the warden. However, my understanding of it is that it does address the sufficiency to prove the especially heinous, atrocious, or cruel aggravator and only the sufficiency with stray references to a Jeffers-type claim. Why doesn't that bring in the panoply of law related to that determination? Because the Supreme Court treated these as separate inquiries in Lewis v. Jeffers. Certainly, the Court of Criminal Appeals was required to apply a narrow aggravator. But if the petitioner believes that they did not, then he was required to exhaust that claim and he did not. And what say you to the argument that if the matter was not properly raised before us, either at the trial court level or on appeal, that that is merely because of ineffective assistance of counsel in doing so? That properly presented, those matters would have been made even more clear than they are? Petitioner does not have a COA on that claim, nor is it exhausted. One second on that point, because I thought that there was an argument presented here on ineffective assistance of counsel relating broadly to the penalty phase of the trial? There is an ineffective assistance claim. I believe you are, Your Honor. There is one ineffective assistance claim relating to first-stage evidence, victim sympathy-type evidence, and then there is one related to the mitigation, but not to the especially heinous, atrocious, or cruel aggravator. So you read the mitigation argument to be very narrow and to exclude the other aspect of ineffective assistance of counsel. Oh, yes. There was no mention of the briefing. Within the IAC mitigation claim, there was no mention of the briefing of the heinous, atrocious, or cruel aggravator. If that had been effective, why shouldn't we notice it? Even if we had to resort to plain error at this point, it just seems to me that that's quite evident that if these arguments have a merit that we hear today, it would be merely because counsel was not effective in erasing them before us. Because AEDPA specifically states that this court cannot grant relief on a claim that is not exhausted, Your Honor. Thank you. Well, no, there's a dispute on that point. And further, there can be no dispute that the Court of Criminal Appeals applied its narrowing aggravator here. The court stated that the state must present evidence from which the jury could find the victim's death was preceded by either torture or serious physical abuse. Cited six of its prior cases in which it applied the same definition. Stated that the facts tend to show that Robbie Andrews suffered serious physical abuse and was conscious of the fatal attack for several minutes. Stated that evidence that the victim was conscious and aware of the attack supports a finding of torture. And then in the mandatory sentence review, stated that they had found the evidence sufficient to support this aggravating circumstance. Let me ask you, as you understand the aggravator, the hack aggravator, is it correct that someone qualifies for the aggravator if the victim was conscious for some period of time, a couple of minutes after receiving the fatal blow and experienced some pain during that time? Correct, Your Honor. That's enough under state law? That is enough under state law. It's also enough under federal law. So let's compare a couple people. Okay. Say the murderer shoots the victim, not a great marksman, not a particularly powerful weapon, so the blow does not instantly kill the person, but loses blood, loses consciousness, suffers pain in the course of that time. And in that circumstance, the murderer would be subject to the HAC aggravator and could be sentenced to death. Is that correct? That's correct. But if the murderer uses a high-powered weapon, gets right on the target, and the person drops dead immediately, that person would not be eligible under the HAC aggravator. Is that correct? That is correct. At least not. So explain the rationale. Is it sort of an Oklahoma bonus, a reward for being a good marksman that you can't be executed if you're really good at killing the person? The rationale is that that is a principled basis on which to distinguish those murders which are deserving of the death penalty and those murders which are not. That is that the victim suffers pain, which certainly makes a murder, I think everybody would agree, that makes a murder worse than a murder in which the victim does not experience pain. And that's what the OCCA says constitutes torture? Is that what you said? No, torture is generally viewed as either kind of the typical definition of torture or... I didn't think it was until I heard you say that. But that's not an example of torture. It's not, and if I said that, I'm sorry, I was mistaken, Your Honor. I'm sorry. No, I just cleared my throat. Oh, okay, I'm sorry. In Walton, the Supreme Court rejected the argument of Justice Blackmun when he stated that the Arizona Supreme Court had never required that the period of fear or uncertainty for the victim to suffer mental anguish had to be of extended duration. He said, quote, The court has made findings of cruelty in cases where that period was brief. Indeed, in explaining the sorts of murder that would not be especially cruel, the Arizona Supreme Court has repeatedly referred to killings in which the victim was not conscious and has explained that the victim of an especially cruel killing is to be contrasted with the individual who was killed instantly without knowing what happened. The California Supreme Court required other things to satisfy. In Walton, the Supreme Court said that the Arizona aggravator had been interpreted by the Arizona Supreme Court in a constitutionally proper way. It didn't say that it was enough just that the person was alive for a short period of time. It required other components. Isn't that correct? Well, they have disjunctive. You can be cruel. It can be... But as far as cruelty goes, yes, even the majority of the Supreme Court in Walton recognized with approval that the Arizona Supreme Court for mental cruelty had only required that the victim is shown to have experienced fear and uncertainty as to his ultimate fate. And what Justice Blackmun was saying and what the majority was rejecting is that that uncertainty needed to be of a certain duration or an intended consequence. And that was on direct appeal. And then the court had... You listed the jeopardy, right? Correct. And in that case, I'm not sure that you didn't read more too much into that. In that case, the Supreme Court had decided Walton on the same day, right? Yes. So there was no question, particularly on habeas as opposed to direct appeal, which Walton was, that the Arizona aggravator had been constitutionally narrowed through the instruction given it by the Arizona Supreme Court. Isn't that correct? That is correct. So what the Supreme Court said then is... So the only thing left for this case is whether there was sufficient evidence to meet that construction. And under that circumstance, they said Jackson applies. Isn't that what happened in that case? No, I respectfully disagree, Your Honor. What the Ninth Circuit had said was that... I know how the Ninth Circuit... I'm talking about by the time it came to the Supreme Court and was being decided on the same day as Walton. The Ninth Circuit said some things that turned out to be irrelevant to what the Supreme Court was deciding. But at that point, the only issue before the Supreme Court in Louis v. Jeffords was whether there was sufficient evidence to support the aggravator as construed by the Arizona Supreme Court. Because the U.S. Supreme Court had already decided that day that the aggravator, as construed by the Supreme Court, met Eighth Amendment requirements. The Supreme Court ruled that that was the only challenge that was properly before them. However, the petitioner was also arguing... Because the Ninth Circuit had also found the aggravating circumstance to be facially okay. But it had gone on to say, but it can't be applied to the facts of this case without losing its ability to distinguish murderers. And the Supreme Court said, we don't go there. That's not what we do. The question is only, if it's facially okay, then Jackson is the only question that we answer. And we do not look at the facts of the case to determine whether... Because that's the function of the aggravating circumstance. That's certainly my reading of Louis v. Jeffords, Your Honor. And they had said the same thing in Walton as well. Do we have more here than physical suffering? We do. We have mental cruelty as well, Your Honor. And did the OCCA rely on that as well, on the sufficiency review? I believe they did, Your Honor. They weren't as explicit as maybe I would have liked. However, they did talk about torture. They said evidence that the victim was... which would be the mental cruelty. Evidence that the victim was conscious and aware of the attack supports the finding of torture. Many of the cases they cited were extreme mental cruelty cases and not conscious physical suffering cases. He knew his attacker. He knew the attacker was having an affair with his wife. He knew the attacker and his wife had tried to kill him before. He was in fear of his life from these people. All of that, yes, Your Honor. And in addition, I would point this court to the ReVilla case where it was a child abuse murder. And there was not sufficient evidence that the child victim had consciously suffered on the day of the murder. But the Court of Criminal Appeals and this court both considered the month leading up to that where the victim had been abused. And here we have nearly a month in which Rob Andrew was terrified. There are recordings of his phone calls with Prudential trying to get his life insurance policy changed because he correctly suspected that Brenda Andrew and Petitioner had tried to kill him for that money. And he was very frightened for his life. I would like to briefly return to the idea that suffering must be of any sort of duration with the case of Bell v. Combe. In that case, again, the Supreme Court talked about the fact that the Tennessee Supreme Court, in applying its torture or depravity of mind aggravator, had distinguished between instantaneous and non-instantaneous deaths. The court said, with respect to the meaning of torture, the Tennessee court held that the aggravator was not satisfied where the victim dies instantly, but that it was where the uncontradicted proof shows that the victim had defensive injuries to her arms and hands, proving that there was time for her to realize what was happening, to feel fear, and to try to protect herself. Then the court said, accord Cartwright approving torture or serious physical abuse. So it's clear that the Supreme Court has a broad definition of torture or serious physical abuse, which does fall, or at least that they accept state courts who make the distinction between an instantaneous and a non-instantaneous death. What do we do with a case like Myers, where the person was shot five times, but the medical examiner couldn't be sure which shot caused him to lose consciousness? Not sufficient. Correct. And what about Simpson, where death was nearly immediate, numerous gunshot wounds to the head, chest, and likely died within several minutes or seconds after he was shot? I mean, what does it mean that it's heinous, atrocious, or cruel? I mean, can you tell me of a person you know that was murdered that didn't feel pain initially? In Lewis v. Jeffers, Your Honor, where the defendant injected the victim with a heroin, I believe it was heroin overdose, that's why the Arizona Supreme Court in that case found no evidence of cruelty and affirmed on depravity of mind. I'm sorry, did what? Affirmed on depravity of mind, but found no evidence of cruelty because the victim did not suffer any consciousness. Anything that's cruel is sufficient to meet that aggravator. No, Your Honor. Cruelty can be found any time there is conscious physical suffering. How long do you have to consciously suffer to have it be cruel? The Supreme Court has said that... That's what the Oklahoma Supreme Court of Criminal Appeals said. They have expressly refused to impose a duration requirement, and they have affirmed, as has this Court, with as little as 30 seconds in the Cole case. If as little as 30 seconds of consciousness following a fatal gunshot is enough to meet the hack aggravator, what is not enough? That picks up a whole universe of cases. An instantaneous death is not, Your Honor, and the Supreme Court, as I said, in both Walton and Bell v. Compton... Does Oklahoma law require an instantaneous death in order to not have a hack aggravator? The Oklahoma law requires that the victim be conscious and either physically suffering or aware of the attack and does not impose a duration requirement. Seems to me like that's, as Judge Kelly asked, every murder. Well, Your Honor, the Oklahoma Court of Criminal Appeals has reversed findings of this aggravator in 24 cases. So it certainly does not apply to every... or at least 24 cases. It does not apply to every murder. In fact, the Simpson case... Could you give us some examples of those 24 cases? Not all of them, of course. Sure. One of them, in the Simpson case, the court reversed on one of the victims and affirmed on the other. There was Stouffer. There was Chaney. There was Brown. There was Odom. And I could go on if you would like me to grab my notebook from the table, but... You've told us nothing about the facts, just a series of names, thank you. Many of these are in Judge Briscoe's dissent, right? Yes, Your Honor, they are. And also in our briefing, to show that the Court of Criminal Appeals distinguishes between those cases in which there is evidence of conscious physical suffering and does not hesitate to reverse where that is the case and those cases where there is evidence of conscious physical suffering. I would further point out that in Tulapa v. California, when the Supreme Court said that its vagueness review is quite deferential, it also said that where it has reversed, it has been because there are pejorative adjectives that describe the crime as a whole. And Oklahoma's aggravator certainly does not fall within that description. The especially heinous, atrocious, or cruel did initially, and that's why it was reversed. But now, with the requirement of torture or serious physical abuse, it is not a pejorative adjective. But serious physical abuse is pretty much the same thing in every case. It's the gunshot. And it kind of depends by chance on whether it's just how much of a marksman the shooter was. It doesn't seem to relate to anything, any act on the part of the shooter. But what it relates to, Your Honor... It's chance. Well, and the Supreme Court rejected that argument in Walton v. Arizona where Justice Blackmun made it, and he said you could have someone who does overkill and then that can be an aggravating circumstance versus someone who doesn't use enough force so that the victim lives. So the Supreme Court has rejected that argument. But I would further argue that the reason that it makes a principal distinction is because the suffering of the victim is something that nearly everyone would find to set a murder apart. Hasn't there been a slide in the law, though? Because when I read these early cases, the torture or the serious physical abuse has to precede the murder. In other words, it's something separate. And then there's all kinds of graphic cases where someone was physically abused and someone was tortured before they were ultimately killed. And then somewhere along... And I guess it's... I think it's Thompson v. Gibson, which is a case where a woman was horribly beaten, stabbed, everything else. Death penalty is overruled in the Tenth Circuit because there was no evidence of conscious physical suffering. It wasn't good enough evidence. So at that point, you had... To me, it's almost like the whole thing switched. You used to have to have conscious physical suffering, period, if you were going to go on and show torture or serious physical abuse. But now, if you have conscious physical suffering, you've shown torture or serious bodily abuse, physical abuse. That seems... Do you agree with me that the law has kind of flipped in that regard, reading the early cases versus the ones that we have now? I would first like to note that the Supreme Court has held that the consistency with which a state court applies its aggravating circumstances is not a proper constitutional claim. But then to answer your question, there are two cases, Cudjoe and Hawkins. They were in 1994 and 1996, where the Court of Criminal Appeals reversed and said that something is required beyond simply the act of killing. But those are the only two cases of which I'm aware in which they've applied that requirement. Cases before and since then have not. Well, Cheney certainly included something beyond conscious physical suffering. Well, in Cheney, there was insufficient evidence of conscious physical suffering. They said, at most, a couple of seconds was what the state could prove as far as the conscious physical suffering. Well, I guess I'm missing something still. Following Maynard, the Oklahoma Court of Criminal Appeals made it a point to narrow the definition, correct? Correct. And they, as Judge Phillips indicated, required the murder to be preceded by torture or serious physical abuse, which may include infliction of great physical anguish or extreme mental cruelty. Now, and there's a series of cases after that where that's exactly what happened. And it seems that you're shifting back now to, well, if he was conscious for a minute, or he must have been in pain. We don't know whether he was or not. It just seems that there's no parameters here. And how are you narrowing to where only the worst of the worst are given capital punishment, given the death penalty? The Supreme Court has stated, Your Honor, that an aggravator is constitutionally narrow. I know what the Supreme Court said, but I'm wanting to know what Oklahoma is doing. And it looks to me like they've gone from one end to Maynard, and then they went back, and now they're coming back again, and it's less and less and less each time. And I cannot distinguish a murder. If I shoot you through the shoulder and hit your aorta, and it takes you a minute to die, are you going to be in anguish? I bet you will be. And is that heinous, atrocious, and cruel? Whereas if I shot you right between the eyes, maybe you wouldn't be dead right away. Maybe you are dead right away. How do we know? There's got to be some measure. And you can't just say, Well, they say that hack is a jury decision. We've told them it has to be heinous, atrocious, and cruel, and they're the sole arbiters. Well, we've told them that they have to find torture or conscious physical suffering. And the Court of Criminal Appeals has not changed its requirement. Torture or serious physical abuse has been the requirement since Stouffer, after Maynard v. Cartwright, and has continued to be the requirement to this day. Now, do we have torture in this case? We do, in extreme mental cruelty, yes, Your Honor. I'm sorry? Extreme mental cruelty is a form of torture, yes. Where is the extreme mental cruelty? Is it because he stole the guy's wife? And because he tried to kill him about three and a half weeks before he actually did kill him. Robby Andrew was in fear. So we can go back three or four weeks to see if what was set up here was really mean. You can, according to the Ravilla case, both from the Court of Criminal Appeals and from this court, you can look to the past, yes. You also can look to the present, can't you? Correct, yes. And he lay dying on the floor of his garage right before Thanksgiving when he came to pick up his children. He must have been wondering where they were. Well, shot by whom? Shot by either his wife or her lover, yes. Yes. The question that we do not agree with state court to be sure that the evidence is consistent. That's correct. But we can review their opinions to determine how they're interpreting the evidence. Yes. Yes. So in some of the early cases, looking at Booker and Chaney, the court seemed to suggest that, well, I'll just quote, in Chaney, the torture must produce mental anguish in addition to that which of necessity accompanies the underlying effect of torture, not conscious physical suffering. In Booker, the record does not support a finding of mental anguish beyond that which necessarily accompanies the killing. There seemed to be a view at that time that there's got to be more than the suffering that necessarily accompanies a killing. You shoot somebody, you have to do something more. And in fact, I think in Booker, there was some suffering, but it wasn't anything beyond what he suffered as a result of a fatal blow. Is that a correct interpretation of those cases at one time? I don't recall the facts in Booker, Your Honor. I do know that the Court of Criminal Appeals previously, for mental cruelty, has required a more extended duration than they have for conscious physical suffering, that's correct. More extended duration, but it had to be something beyond just having suffered a mortal wound. And it doesn't make a lot of sense for them to say that in that context and not with respect to the other alternatives in the aggravator, so I would have thought that that's how it was being interpreted. And it doesn't seem like they're doing that now. Now, we could say, oh, they're just being inconsistent, you can't review that. But we could also say, looking at these cases, we now see how they're presently construing the aggravator, and whereas before we thought it was a constitutional interpretation, construction, it no longer fits that requirement. I see that I'm out of time, may I? You may answer Judge Hart's question. Thank you, yes. No, I don't, the Court of Criminal Appeals has not ever applied, except, as I mentioned, in Cudjoe and Hawkins. Any further requirement to conscious physical suffering. And so this court must presume, then, under ADPA, you can't make the presumption that would make their rulings unconstitutional by assuming that they must have been extending it to the other aggravator. All right, counsel, your time's expired. We appreciate the arguments this afternoon. Counsel is excused.